**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

REBECCA ROSE, :

                Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant. :

Case No. 3:08-cv-485

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on October 22, 2004, alleging disability from June 29, 2003, due to a spinal impairment. (Tr. 51-53). Plaintiff's application was denied initially and on reconsideration. (Tr. 34-36; 38-40). A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 255-301), who determined that Plaintiff is not disabled. (Tr. 14-26). The Appeals Council denied Plaintiff's request for review, (Tr. 6-8), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe lumbar and cervical degenerative disease status/post lumbar surgery, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 21, ¶¶ 3, 4). Judge Padilla also found that Plaintiff has the residual functional capacity to perform a limited

3

range of light work. *Id.*, ¶ 5. Judge Padilla then used sections 202.20 through 202.22 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 25, ¶ 10. Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 26).

Plaintiff has a history of low back pain that sometimes radiated into her buttocks and posterior thighs. *See,* Tr. 97-107. Plaintiff's treating physician Dr. Ahmad noted on July 1, 2003, that Plaintiff had decreased range of motion secondary to pain, tenderness to palpation around the paraspinous muscles with muscle spasm, and positive straight leg raising. *Id.* An MRI of Plaintiff's lumbar spine which was performed in August, 2003, revealed multi-level degenerative changes with disc bulging at L4-5 and L5-S1, resulting in bilateral neural foraminal stenosis of moderate severity greater on the left than the right. *Id.*

Plaintiff subsequently consulted with orthopedic spine surgeon Dr. Todd who reported in September, 2003, that Plaintiff had an antalgic gait, difficulty toe and heel walking, a decreased spine range of motion, positive straight leg raising, and intact motor and sensory testing. (Tr. 182-84).

Plaintiff was hospitalized October 28-21, 2003, during which time Dr. Todd performed a laminectomy and fusion from L4-S1. (Tr. 108-20). Initially, Plaintiff improved postoperatively. (Tr. 180). However, when she participated in physical therapy beginning in February, 2004, Plaintiff complained of increased low back pain. (Tr. 121-32). On March 29, 2004, Plaintiff cancelled her physical therapy appointments due to pain. *Id.*

Dr. Todd noted on April 7, 2004, that Plaintiff reported she did not have any leg pain

4

but that she had an increase in low back pain which appeared to be over her iliac crest bone graft site. (Tr. 176-77). Dr. Todd also noted that Plaintiff had a narrow-based gait, her lower extremity motor testing was 5/5 bilaterally , and that her reflexes were 1 to 2/4 bilaterally. *Id.*

On July 14, 2004, Dr. Todd noted that Plaintiff reported she continued to have low back pain, that she walked with a narrow-based gait, and that her dorsiflexion, plantar flexion, and quadriceps were 4/5 in strength. (Tr. 175).

A CT of Plaintiff's lumbar spine performed on July 23, 2004, revealed post-operative changes at L4-5 and L5-S1, some foraminal stenosis on the left at L5-S1 with potential L5 root impingement, some foraminal stenosis on the right without impingement, some minor stenosis on the right at L4-5, some degenerative changes at L3-4 without significant neural compression, and rudimentary disc space at the S1-2 level. (Tr. 133).

Dr. Todd noted on November 3, 2004, that Plaintiff's condition was unchanged and on January 26, 2005, he noted that a January 12, 2005, EMG was normal. He recommended that Plaintiff seek pain management treatment. (Tr. 170A; 166-67).

Plaintiff began receiving treatment from Dr. Linehen at The PainCare Center on February 17, 2005. Dr. Linehen reported that Plaintiff had a slightly decreased range of motion of the lumbar spine, moderate tenderness to palpation throughout the lumbar paraspinal muscles and sacroiliac joint regions bilaterally, left greater than right, and intact sensation. (Tr. 186-95). Dr. Linehen also reported that Plaintiff's reflexes were 0-1 and equal, her motor exam was 4+ in all muscle groups of the lower extremities, and that she had a positive straight leg raising. *Id.* In March, 2005, Dr. Linehen performed an L4 and L5 transforaminal epidural steroid injection. *Id.* Dr. Linehen noted on June 15, 2005, that Plaintiff had complaints of low back pain and radicular

5

symptoms and he performed a right sacroiliac joint injection. *Id.* Dr. Linehen performed additional sacroiliac joint injection on June 27 and July 18, 2005. *Id.* Dr. Linehen discharged Plaintiff from his care in December, 2005. *Id.*

During the time that Plaintiff was receiving treatment from Dr. Linehen, specifically in July, 2005, an MRI of Plaintiff's lumbar spine revealed facet arthrosis and post-laminectomy and fusion changes. An MRI of her cervical spine revealed a disc bulge at C5-6 that produced minimal compression of the dural sac and a protrusion of the intervertebral disc into the right lateral recess narrowing the right neural foramen. (Tr. 144; 147).

Plaintiff consulted with neurosurgeon Dr. Bonasso on August 16, 2005, who reported that Plaintiff's neurological examination was negative, an MRI of her cervical spine showed a right-sided disc herniation at C6-7 that was small, and evidence of an old fusion at L4-5 and S1 with good placement of the screws. (Tr. 157-58), Dr. Bonasso identified Plaintiff's diagnosis as post-operative paraspinal muscle pain, right-sided disc herniation C6-7, and right facial numbness. *Id.*

On November 7, 2005, Dr. Yu, a physiatrist and Dr. Todd's associate, reported that Plaintiff had decreased range of motion of the lumbar spine, lumbar paraspinal spasms, lumbar tenderness, exquisite tenderness in the right posterior superior iliac spine, and a normal neurological examination. (Tr. 234-36). Dr. Yu also opined that Plaintiff should continue her pain management treatment with Dr. Linehen. *Id.*

Plaintiff sought treatment from a chiropractor from December 23, 2005, to July 28, 2006. (Tr. 198-203).

Plaintiff continued to receive treatment from Dr. Todd who reported on July 31, 2006, that Plaintiff continued to have persistent back and leg pain, that her dorsiflexion, plantar flexion,

and quadriceps were 4+/5 to 5/5 and that lumbar x-rays revealed hardware holding in good alignment as well as good graft. (Tr. 232-33). Dr. Todd identified Plaintiff's diagnosis as degenerative spinal stenosis L4 to S1 three years post-op from a laminectomy and fusion from the L4 to S1 level. *Id.*

Plaintiff underwent a functional capacity evaluation on November 28, 2006, at which time the evaluator, a physical therapist, reported that the results indicated that Plaintiff was functioning below the sedentary level of a typical eight hour workday and that she was self-limiting throughout the course of the assessment due to lumbar pain, radiating pain, and paresthesias into the lower extremities, and instability with weight-bearing in the lower extremities. (Tr. 219-20). The evaluator also reported that Plaintiff's functional deficits included limited trunk active range of motion, limited sitting and walking tolerance, and limited reaching in all phases with poor dynamic lifting capabilities. *Id.*

On February 19, 2007, Dr. Todd essentially reported that Plaintiff's examination was unchanged and that a recent CT scan revealed some moderate facet arthropathy at the L3-4 level and post-surgical changes at the L4-5 and L5-S1 levels which were unremarkable. (Tr. 230-32).

Examining physician Dr. Smith reported on August 13, 2007, that Plaintiff was overweight, walked carefully, got on and off the exam table very slowly, and the examination of her neck and upper extremities was normal. (Tr. 206-19). Dr. Smith also reported that Plaintiff had decreased ranges of motion of her lumbar spine, was extremely tender over the right greater trochanter, was unable to lie on her right hip, had decreased pinprick over the right posterior thigh and leg, and that her entire right leg showed decreased touch sensation, and that vibratory sensation was decreased to the mid-thoracic region. *Id.* Dr. Smith noted that Plaintiff had 4/5 weakness in

7

both hip extensors, her remaining muscle groups in both legs were 5/5, her reflexes were 2+ bilaterally, her ankle reflexes were absent, that she could raise up on her toes, and that she could tandem walk without difficulty. *Id.* Dr. Smith identified Plaintiff's diagnoses as post-laminectomy syndrome, post-op fusion L4 to S1, essential hypertension, obesity, and right trochanteric bursitis. *Id.* Dr. Smith opined that Plaintiff was able to occasionally lift and carry up to ten pounds, sit for three hours in an eight hour day and for five to ten minutes without interruption, stand for two hours and for five to ten minutes without interruption, walk for three hours in an eight hour day and for ten to fifteen minutes without interruption, occasionally reach, occasionally use her right foot for foot controls, never climb ladders or scaffolds, never work at unprotected heights, and that her limitations had been present since January, 2003. *Id.*

A medical advisor (MA) testified at the hearing that Plaintiff did not meet or equal the Listings, that she was able to lift ten pounds occasionally and five pounds frequently, stand for two hours in an eight hour day, sit for six hours in an eight hour day, would need a sit/stand option, and that she was not able to climb ropes, ladders, or scaffolds. (Tr. 277-84). The MA also testified that there was evidence in the record that supported Plaintiff's complaints of pain. *Id.*

Plaintiff alleges in her Statement of Errors that the Commissioner erred by failing to consider the limitations she has with respect to using her hands, and by failing to properly weigh her functional capacity evaluation. (Doc. 9).

Plaintiff argues first that the Commissioner erred by failing to consider the limitations she alleges she has with the use of her hands. Specifically, Plaintiff argues that Judge Padilla failed to consider Dr. Smith's opinion that she would have difficulty using her hands for sorting and handling or using paper/files.

8

In contrast to Plaintiff's argument, Judge Padilla specifically addressed Dr. Smith's opinion as to Plaintiff's ability to handle and use paper files and determined that his opinion was inconsistent with his physical findings. (Tr. 24).

The weight accorded to a physician's opinion is dependent on whether it is well supported by medically acceptable clinical and laboratory techniques and whether it is inconsistent with the other substantial evidence in the record. *Cf., Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994). Stated differently, the Commissioner may properly reject a physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983).

Although Dr. Smith indicated that Plaintiff could not sort, handle, or use paper/files, (Tr. 218), that conclusion is inconsistent with his physical findings as well as with his other opinions within his report. For example, Dr. Smith reported that his examination of Plaintiff's upper extremities was normal. In addition, Dr. Smith noted that Plaintiff's abilities to grasp, manipulate, pinch, and perform fine coordination were normal in both her right and left hands. (Tr. 209). Further, Dr. Smith determined that Plaintiff could continuously reach, handle, finger, feel, and push/pull with both hands. (Tr. 215). Finally, as noted *infra*, Plaintiff testified that she engaged in various activities which included crocheting and sewing.

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Smith's determination that Plaintiff could not sort, handle, or use paper/files.

Plaintiff also argues that the Commissioner erred by rejecting her allegations of her inability to use her hands. However, for the same reasons that the Commissioner properly rejected

9

Dr. Smith's opinion as to Plaintiff's inability to sort, handle, or use paper/files, the Commissioner properly rejected Plaintiff's subjective complaints as to her hands.

In support of her second Error, Plaintiff essentially argues that the Commissioner erred by failing to give the proper evidentiary weight to the opinion of the physical therapist who performed the November, 2006, functional capacity evaluation.

In evaluating Plaintiff's residual functional capacity, Judge Padilla noted that a physical therapist is not an acceptable medical source. (Tr. 24) and that the physical therapist's conclusions were inconsistent with other evidence of record. (Tr. 21-23).

First, Judge Padilla is correct that a physical therapist is not an acceptable medical source. 20 C.F.R. §404.1513. In addition, the physical therapist's opinion as to Plaintiff's residual functional capacity is inconsistent with the other medical evidence of record as well as with Plaintiff's own self-reported activities.

As Judge Padilla noted, in contrast to the physical therapist's opinion, no other physician of record indicated that Plaintiff is as limited as the physical therapist described. In addition, the objective medical evidence indicates that Plaintiff has, at worst, moderate findings and, further, her EMG was normal. Finally, Plaintiff reported that she engages in a variety of activities including driving every day, working for a chiropractor two days a week for five hours a day, cooking, washing dishes, running the vacuum, doing laundry, swimming, eating out, crocheting, sewing, and doing crafts.

Under these circumstances, the Commissioner had an adequate basis for rejecting the physical therapist's functional capacity opinion.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the

10

decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

October 27, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge


NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).